UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JEROME L. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13-1539 |
| | ) | |
| MICHAEL MCCOY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER & OPINION**

Plaintiff, proceeding pro se and presently incarcerated at Dixon Correctional Center, brings the present lawsuit pursuant to 42 U.S.C. § 1983 alleging a Fourteenth Amendment claim for failure to protect from harm for events that occurred while Plaintiff was in custody at the Peoria County Jail. The matter is before the Court for ruling on the Defendant's Motion for Summary Judgment (Doc. 31). For the reasons discussed below, the motion is granted.

## **LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTUAL BACKGROUND[1]

Plaintiff was a pretrial detainee incarcerated at the Peoria County Jail at all times relevant to this lawsuit. Because of a newspaper article written in early 2013, Plaintiff had been housed separately from other inmates while at the jail as the article labeled Plaintiff as a police informant. As described by Plaintiff, this arrangement was a form of protective custody. At some point prior to the events described below, Plaintiff requested to be removed from "protective custody" and Plaintiff was thereafter assigned to a cell within the jail's general population. This did not last long. Plaintiff received threats within the first 10-15 minutes after arriving at his new cell and quickly returned to his previous arrangement.

On August 26, 2013, Plaintiff, along with other inmates, needed to be transported to the courthouse. After boarding the bus to the courthouse, Plaintiff was attacked by other inmates. The attack was broken up by Defendant Cheney, who took Plaintiff off the bus and sent him to the medical unit for examination. Plaintiff stated that he was attacked by two inmates, one of whom he identified as Inmate Logan. Plaintiff could identify the second assailant only by nickname.

After the medical examination, Plaintiff was transported by himself to the courthouse. Upon arrival, Defendant Cheney informed courthouse security staff of the earlier incident and Plaintiff was placed in a holding cell by himself. Upon notification to transport Plaintiff to the courtroom, Defendant Cheney escorted Plaintiff to the elevators and, prior to arriving at the courtroom, transferred custody of Plaintiff to a courthouse security deputy.

---

[1] Unless otherwise noted, the facts are undisputed.

Plaintiff was placed in the holding cell outside the courtroom. He was not alone. The holding cell was occupied by several other inmates, although Inmate Logan was not one of them. Plaintiff did not convey any reservations or fears about a potential assault to the courthouse deputy prior to entering the cell. Shortly thereafter, Plaintiff was attacked. Upon hearing of the second attack, Defendant Cheney returned to the courtroom holding cell and took custody of the Plaintiff. Plaintiff was transported back to the jail where he received medical attention. Plaintiff did not suffer any serious injuries.

## ANALYSIS

As a pretrial detainee, Plaintiff's claims arise under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. Despite this distinction, there exists "little practical difference between the two standards." *Mayoral v. Sheahan*, 245 F.2d 934, 938 (7th Cir. 2001) (quoting *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)). "The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." *Forrest v. Pine*, 620 F.3d 739, 744 (7th Cir. 2010) (citing *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009)).

To succeed on a failure to protect claim, a plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and, (2) prison officials acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For purposes of satisfying the first prong, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.* at 843. A prison official acts with deliberate indifference if he "knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.3d 344, 349 (7th Cir. 1991)). Liability attaches where "deliberate indifference by prison officials effectively condones the attack by allowing it to happen…." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996).

Plaintiff was segregated from other inmates because of the newspaper article labeling him as a police informant, and the risks inherent to those so labeled has been well-noted in Seventh Circuit jurisprudence. *E.g. Dale v. Poston*, 548 F.3d 563, 569-71 (7th Cir. 2008) (noting inmates labeled as "snitches" face unique risks, including attacks, and often occupy the lowest rung in the prison hierarchy). Moreover, being segregated from other inmates for purposes of protection carries with it additional risks as it often carries a stigma that those protected are cooperating with authorities. *Id.* at 570. Plaintiff's situation at the Peoria County Jail provides ample support for a reasonable juror to conclude Plaintiff was incarcerated under conditions posing a substantial risk of harm, especially when considering that Plaintiff's attempts to assimilate into the general population were met with threats of violence from other inmates. *See* Pl. Dep. 25:14-26:6.

That said, just because Plaintiff was labeled a police informant and Plaintiff was subsequently attacked does not mean that Defendant Cheney violated Plaintiff's constitutional rights. *Dale*, 548 F.3d at 570. "Each case must be examined individually, with particular focus on what the officer knew and how he responded." *Id.* On August 26, 2013, Plaintiff and other inmates needed to be transported to the courthouse for their respective legal matters. Prior to

transport, the jail produces a list of inmates to be transported on the given day. (Doc. 31-2 at 5-8). The lists contain handwritten notations indicating which inmates should be separated as well as gang affiliations of individual inmates. The list for August 26, 2013 does not contain any notations regarding inmates from whom Plaintiff should have been kept separate, and only indicates Plaintiff's alleged gang affiliation. (Doc. 31-2 at 5). Furthermore, a search of jail records shows "no specific separations or keep away from other inmates" for Plaintiff on the day in question. Asbell Aff. ¶ 3 (Doc. 31-3 at 2). Plaintiff does not allege he informed Defendant Cheney of a specific risk of harm and, thus, there is no evidence that Defendant Cheney was aware of any risk of harm to Plaintiff prior to placing Plaintiff on the bus. After Defendant Cheney became aware that the risk existed, that is, after Plaintiff was attacked on the bus, Defendant Cheney separated Plaintiff from his assailants and Plaintiff was thereafter transported to the courthouse by himself.

Once at the courthouse, Defendant Cheney notified courthouse security for the courtroom in which Plaintiff was scheduled to appear of the earlier attack, and Plaintiff was held on the ground floor, away from the other inmates, until Defendant Cheney was notified to bring Plaintiff upstairs. Once upstairs, Defendant Cheney transferred custody of Plaintiff to courthouse security and Plaintiff was placed in the holding cell with other inmates. Inmate Logan was not in the holding cell. Though Plaintiff alleges he had reservations about going into the holding cell, there is no evidence to suggest that Plaintiff informed any deputy or courthouse personnel of those concerns. Moreover, Plaintiff admitted in his deposition that he had not had any previous altercations with those inmates in the holding cell. Pl. Dep. 35:22-36:1.

From these facts, no reasonable juror could conclude that Defendant Cheney's actions in separating Plaintiff from Inmate Logan, transporting Plaintiff to the courthouse separately, and

informing those security officers who would be responsible for Plaintiff in the courtroom of the prior incident were unreasonable or deliberately indifferent. Therefore, Defendant's Motion for Summary Judgment should be granted.

**IT IS THEREFORE ORDERED:**

1) **Defendant's Motion for Summary Judgment is GRANTED [31]. The clerk of the court is directed to enter judgment in favor of Defendant and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith.** See **Fed. R. App. P. 24(a)(1)(c);** *see also Celske v Edwards*, **164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 23rd day of June, 2015.

                                       *s/Joe B. McDade*
                                JOE BILLY MCDADE
                     UNITED STATES DISTRICT JUDGE